Good morning and may it please the Court. My name is Carla Higginbotham. I'm an attorney with the law firm of McDonald-Corona-Wilson. I am here today as pro bono counsel for Marco Salazar-Reyes. There are four of the six cases that the Court will hear this morning have a common issue, which relates to whether or not a parent's status can be imputed to their unemancipated minor child for purposes of cancellation of removal. And so there are several issues raised in this particular petition for review. I would like to focus this argument on that issue as it relates to this case. Specifically, we have asked this Court to grant the petition for review and remand this case to the immigration authorities to allow Salazar-Reyes to apply for cancellation based upon the imputation of his mother's lawful permanent resident status. There are two points that I think are important to this appeal. First, that the Board of Immigration Appeals' decision in Enriquez-Guevara does not preclude this Court from deciding that, in fact, imputation can be provided for cancellation of removal. Is there language in this case that causes you some concern? There is language in that case that causes me significant concern. What is it? How did you go to that? Well, specifically, the decision itself and the language that's created in that case is unreasonable for several different reasons. First of all, if you look at the language of that particular decision, it really starts out with really a distaste or distrustfulness of this Court's decision in Clavis-Gasper. But, moreover, some of the specific rationale that the U.S. Supreme Court has. Is it justified? No, I don't believe that it is. I think if you look at the Clavis-Gasper case, it does go through very thoroughly. But here don't we talk about personally present in the United States in your case? Well, not necessarily. If you look at the Clavis-Gasper case, I think it makes it clear that imputation can be provided to the unemancipated minor child for lawful permanent resident status. This Court did not just decide Clavis-Gasper in that particular way, but, in fact, there's a history in this Court of that type of imputation. If you go back to the Lupe case, in fact, which was the impetus for the Clavis decision, that Court in that particular instance did impute lawful permanent resident status to an unemancipated minor child for purposes of satisfying the seven-year requirement of what was the former waiver of deportability provision, section 212C of the INA. And so to answer your question back to the unreasonableness of what I believe Escobar talks about is the fact that in that particular instance, that Court's decision made certain decisions and points based upon inaccuracies of what has actually happened prior to the decision in that case. One of the first things that it talks about is that there is no law, there is no authority for this idea that lawful permanent resident status can be imputed to an unemancipated minor child. Well, that's simply not the case. If you look both at Lupe and at Clavis, that's exactly what this Court did. It imputed lawful permanent resident status for purposes of establishing both the seven- and the five-year requirements. You seem to sweep Brand X under the rug as though it didn't exist. How do you deal with it? Well, to be perfectly honest with you, Your Honor, I do not believe that what we have in this particular instance is an issue with Brand X. Why not? I realize that the government has filed a 28J letter where they indicated that Brand X and subsequent decisions in this Court make some sort of determination as to whether or not this Court can actually rehear or re-decide what happened in the Clavis case. But I would disagree. First of all, if you look at specifically the Ramirez-Vargas case, which the BIA decided later, finding that, in fact, the Clavis case no longer needs to be followed by the Board of Immigration Appeals, there's several problems with that, not the first of which is, I think, that, quite frankly, the decision in Ramirez-Vargas interpreting Brand X and interpreting Gonzales may even fall under what Justice Scalia had talked about in his dissenting opinion as potentially unconstitutional. But on its face, doesn't Brand X preclude us from ignoring the BIA's decision in Escobar? No, I don't believe that it does. Why not? Because just like in the prior Chevron analysis, Brand X does not change the fact that an immigration authority's determination or interpretation must still be reasonable. So you say it's unreasonable because it's in disagreement with the Ninth Circuit? No. That's not my only reason for believing that it's unreasonable. As I've already indicated, I believe that it's unreasonable because it's contrary to the congressional purpose and policy underlying not only the cancellation of removal statute itself, but also the larger immigration statutory scheme. For example, there is a longstanding policy that we have where we want to unite and connect families. And the idea of not allowing imputation for cancellation purposes in this context totally cuts against that policy rationale. But, moreover, we have a longstanding policy in our immigration laws where we will give rights to lawful permanent residents that are greater to nonpermanent residents. Well, that's a good argument, but reasonable persons may differ as to the impact of the policy. It isn't – it's not unreasonable just because you disagree with it. That's true. There can be different interpretations, and they not are – they are not all unreasonable. But I think if you look at the specific rationale, the analysis given by the Escobar case, particularly when you read and review what the Travis case went through, the analysis that was given, I do believe that what you end up with is an unreasonable interpretation in its whole, because not only does it violate the lawful permanent resident status, the idea of policy behind giving more rights to that, it also undermines the idea of these family reunifications and the several provisions in the immigration codes where we want to do that, but it also cuts against the longstanding policy not only of the Board of Immigration Appeals, but also of the Ninth Circuit of imputing status to children. I don't know about how longstanding. When you say longstanding, that means a long line of cases. You don't find a long line of cases. Well, it goes all the way back. I think you can start with the Vang case, where we talked about the imputation of both asylum and refugee status. You then go on to the Lube case. There's also a line of cases from the – But there's a tradition of, aside from imputation specifically in the immigration law, which we've discussed in our cases, of treating the family as a unit. That is correct. In all aspects of immigration law. That is correct. And I think the Lupe case talks about that. The Cuevas case also talks about that, that this policy is a longstanding policy, and there is a longstanding policy with respect to imputation as well. At this point, Your Honors, I would like to reserve the remaining time that I have for rebuttal, and I thank you very much for your time. Thank you, counsel. Good morning, Your Honors. My name is Carol Federighi. I represent the Respondent, the Attorney General, in this matter. Your Honors, the Court does not need to reach the Escobar and Cuevas-Gaspar issues in this case. Petitioner Salazar never filed an application for cancellation of removal with the agency. He never even mentioned cancellation of removal. Isn't it in the issuance of intervening a change in the law, doesn't that allow him to argue that now? He's not arguing a change in the facts. He's arguing a change in the law. The Court has never held that a change in the law enables an alien to raise a completely new application after the board has issued a decision and raise it for the first time before this Court. He both has failed to exhaust his administrative remedies, and the Court also lacks authority to remand for the taking of new evidence under jurisdictional statute 1252A1. Haven't we remanded in other cases that where there has been an intervening legal decision that the board hasn't had an opportunity to consider? The petitioner does not cite a case that falls within that category. The cases that petitioner cites involve cases where there was an event subsequent to the board's decision. For example, I can't remember the exact facts, but there was the re-papering case, Alcazar, I think is the name of it, that they cite. And what happened in that case was the board failed to apply a policy that it had already issued policy statements on before it issued the decision in the alien's case in that instance. So it basically failed to apply existing law at the time, and that's why the Court remanded it. There's no case where the Court remanded for the taking of new evidence on an application that the petitioner has never, did not previously file before the board. It's also somewhat ---- Yes, at this point he has no remedy. He had left the United States prior, I think prior to Cuevas-Gaspar coming down. So he did not have a remedy at that point to file a motion to reopen after he left the country. He did have the opportunity to raise, to apply for cancellation of removal before the immigration judge and to make the same arguments that Cuevas-Gaspar made in his case. Lepe-Guitron, the case on which the Court relied in Cuevas-Gaspar, had already been decided by the time Mr. Salazar had, was before proceedings with the immigration judge. He could have made the same argument from Lepe-Guitron that Cuevas-Gaspar made in his case and argued for a cancellation of removal. In fact, Cuevas-Gaspar's case was before the agency in 2003, before Salazar's case was before the agency. So he could have made the same argument. But Salazar was pro se, right? He was actually assisted by attorneys from the Florence Immigration Rights Project. So he was nominally pro se, but he was, he did have the assistance throughout his proceedings of attorneys from the Immigration Rights Project. And they could have made this, and they made a, they did make some arguments on his behalf. They could have also applied for cancellation of removal on his behalf, and they failed to do so. The Court has never, as I said, held that an alien can be excused the exhaustion requirements for completely failing to seek a form of relief. What would be your bottom line on this position of this Court as you see the, the postulate of the case? I believe the Court should dismiss the part of the petition for review seeking a remand to apply for cancellation of removal, both for failure to exhaust and because the Court lacks authority to remand for the taking of new evidence under 1252A1. And as far as his other request that he's eligible for adjustment of status, the Court should deny the petition for review as to that claim. That's our bottom line. As far as the new evidence remanding for taking of new evidence, I just want to point out that he does need, he would need a new hearing if he was going to seek cancellation of removal. He, cancellation of removal after they would need, the agency would need to address his issues about the length of his residence and the length of his admission as a lawful permanent resident. But in addition, the immigration judge and the agency decides whether to grant cancellation of removal based on the equities of the situation, both positive and negative. There's nothing regarding those issues in the record. So a new hearing would have to be held at which new evidence would be presented. And 1252A1 clearly prohibits the Court from remanding for that purpose. So we believe the Court does not have jurisdiction to entertain his cancellation of removal request. If there, and as we said, the adjustment application, we believe he's not eligible for adjustment under his previous visa petition, that once the visa was issued pursuant to the old visa petition, that was essentially used up and he needs, his mother would need to file a new visa petition on his behalf. Therefore, he's not currently eligible for adjustment of status and that claim should be denied. If there, I can move on to the Escobar. To the extent the Court feels that the Escobar and Cuevas-Gaspar issues are part of the case, I'll address those briefly. I will also be addressing them later when the Escobar case comes up before the panel. The Court has held, or the Board held, that a lawful permanent resident alien must himself have been an LPR for five years in order to be eligible for adjustment of status. We believe that interpretation is reasonable and is entitled to deference by this Court. It's consistent with the legislative statutory language and the legislative history. Let me just review the facts here. Mr. Salazar's mother obtained lawful permanent resident status in 1992. He did not obtain lawful permanent resident status until 2001. It's not clear in the record on what basis his mother obtained her lawful permanent resident status, but clearly it was under a provision, and I'm thinking it was probably legalization or amnesty, that does not permit the primary alien to bring along children as derivatives of the primary alien's immigrant visa petition. So the policy that the Court identified in Cuevas-Gaspar, that there's a high priority in maintaining the relationship between a lawful permanent resident alien parent and his child, simply does not apply here, where the statute clearly permitted Mr. Salazar's mother to adjust, but did not permit him to adjust as a derivative of that application, but required him to pursue his own separate application. To allow him now to impute years of residence that his mother accrued as a lawful permanent resident would basically constitute an end run around this limitation in the statutory scheme. The statutory language requires that the alien have been lawfully admitted for permanent residence for five years. The term lawfully admitted for permanent residence is defined in another part of the statute, the definitional section, 1101, and that requires, states that being admitted, lawfully admitted for permanent residence is the status of having been granted lawful permanent residence in compliance with immigration laws. So it's a formal term referring to someone's legal status. That's something that is conferred upon an individual by the government. It's not something they unilaterally can control the way residency and domicile can, is sort of unilaterally in control of the alien. So on that basis, this case can be distinguished from the reasoning in Cuevas-Gaspar and La Viguitron. Are you going to make the same arguments later? Yes, I am. Again and again? We don't, I mean, maybe, do you want to? I can defer. Really. So later if that would. Keep making the same, I mean, I know you're going to make the same arguments again. I mean, perhaps we should have consolidated some of the cases, but they each seem to, they each have a different kind of hook. Sure, they all have a different twist. And in this case, as I said, we don't believe the court needs to reach the Escobar and Cuevas-Gaspar issues. So I'm happy to defer until the Escobar case comes before the panel. I just, since she had addressed the merits, I wanted to get to those at this point, but I'm happy to defer. And then I have nothing else to say on the other issues if the court has no further questions. Thank you, counsel. Thank you. I would just like to make two points of rebuttal, specifically to the jurisdictional issues that were raised by the government. First of all, under 8 U.S.C. section 1252 D.2, it's quite clear that exhaustion of administrative remedies is not required where there has been a change in the law subsequent to the petition being heard by the board. What case do you rely on for that? Well, I think if you look at the specific statutory language itself, it talks about the fact that a court can hear a matter if there has been a subsequent change in the law relative to the issues that were presented. The statute is clear. Right, but here, unfortunately, your client didn't previously present his cancellation of removal claim. That's correct, but that was partly because at that point, there was no cancellation of removal claim, at least to the extent that he believed that there was. And I do want to point out, the court is absolutely correct. He was pro se. So to the extent that he may or may not have been getting advice, we really have no idea what the extent of that was. But he was going on his own. How was he supposed to know that there was this case called Luffé-Goutron that he could rely upon and then make an extension of related to the fact that it was a waiver of deportatability, now there's been an amendment, now I can make this argument relative to this new statute? To make that kind of assertion is really, you know, frankly, it doesn't make any sense. That's just not correct. So to the extent that he may or may not have been able to make that argument, I don't think that's an accurate statement relative to the actual record here. Certainly, there are... If we were to agree with you and remand for consideration of this cancellation of removal claim based on intervening change in the law, he would then be in the posture of arguing to the BIA for an extension of Pueblos-Gaspar. That is correct. And the BIA has kind of let us know they don't necessarily agree with Pueblos-Gaspar. That doesn't mean that we're not necessarily bound by it, but so his chances would seem pretty remote. Well, to be honest with you, I'm hoping that the court will listen to the Escobar decision today and disagree with what the Board of Immigration Appeals has already decided on that particular issue. And then that would not be a requirement for this court to... No, but you're still arguing for an extension. Well, to be honest with you, I think what we're arguing is twofold. First of all, based upon the very language of Pueblos-Gaspar, there is language in that opinion which does seem to indicate that it did apply to not only the seven-year requirement, also to the five-year requirement. I mean, there's certainly language in that particular opinion. And I think from a practical perspective, if you look at the two different sections or elements as they're required, one is a five-year requirement for lawful permanent resident status, but the second is a seven-year requirement in any status. Well, common sense tells you, well, five of the seven years necessarily has to be in lawful permanent resident status. So there is an argument, I think, that can be made. And certainly, based on the language of that opinion, there is an application that can be made by CUAVAS to that five-year requirement, though they did not have to necessarily reach that issue. So to that extent, I don't necessarily believe that we are simply asking for an extension. We do believe that this is new law. We do believe that it applies. But moreover, in this case, Salazar-Reyes can't actually meet the seven-year requirement without the application of CUAVAS-GASPER as well. And so, respectfully to the government, I disagree that this Court does not have jurisdiction to consider this issue. And moreover, we would ask this Court, respectfully, to grant the petition for review and allow the Board of Immigration Appeals to hear this cancellation of removal of application. I'd also like to make clear this idea of asking for rehearing on new evidence. The government hasn't contested any of the factual contentions we've made in our brief. They haven't contested the fact that he came here in 1980 as a 2-year-old. They haven't contested the fact that when he was 6, in 1992, he gained his visa, I-130 was approved. They haven't contested the fact that in 2001, he got his lawful permanent resident status when he was only 17. And so, quite frankly, based on that, I think there's quite clearly evidence in the record that he was an unemancipated minor child during this period of time. And the government hasn't contested any of those facts. And so if we were to remand, would it go back to the original I.J., John Davis, or what, does it go to the BIA? Well, I, you know, to be perfectly honest with you, I think you would have to remand it to the BIA with instructions that it go back to the immigration judge for further hearings on that particular issue. To be perfectly frank with you, unfortunately, I'm not an immigration practitioner. I don't do that as my normal work, so I'm not totally certain how the whole entire process would work. But, yes, I do agree that that would probably need to happen. And so with that, Your Honors, I would like to thank you again for your time and ask you to grant the petition for review. All right. And thank you very much for appearing pro bono. We appreciate the extra work and time doing that. And the zeal with which you represented your client. Yes. Okay. Salazar-Reyes v. Ducasey will be submitted. And we'll take up Martinez-Martinez v. Ducasey. Oh, I'm sorry. Yes, that's right. We previously submitted on the briefs Martinez-Martinez v. Ducasey. And we previously submitted on the briefs Ramos-Barrios v. Ducasey. So we're on, we'll take up Mercado-Vizueta v. Ducasey. Randy Tunack for the petitioner Jose Luis Mercado-Vizueta. I respectfully reserve two minutes for rebuttal.
judges: Farris, Wardlaw, Schwarzer